# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR DEOLEO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Breach of Contract<br>2. Breach of the Duty of Good Faith and Fair Dealing<br>3. Unjust Enrichment |

Plaintiff Victor Deoleo ("Plaintiff"), individually and on behalf of all others similarly situated, alleges for his Class Action Complaint against Defendant United States Liability Insurance Company ("Defendant"), as follows:

## NATURE OF THE CASE

1. This is a class action arising from Defendant's denial of insurance coverage for Plaintiff's business closure due to the COVID-19 pandemic.

2. Plaintiff, like many Americans, is a small business owner devastated by the impact of the pandemic. He had been the owner and operator of Santas Beauty Salon, a local "mom & pop" beauty salon in Hackensack, New Jersey, until the pandemic affected New Jersey and the rest of the nation beginning in early March 2020. Unable to maintain his business operations—a beauty salon entirely reliant on

1

in-person patronage—Plaintiff suffered extensive loss of business profits and had to close the salon down.

3.   Also like many small business owners, Plaintiff needed protection against unforeseen events that could affect his business operation and profits and invested in an "all risk" commercial insurance policy and regularly paid monthly premiums to Defendant for the policy (the "Policy"). After being devastated by the impact of COVID-19 on his business, Plaintiff promptly sought relief via the Policy by filing a claim with Defendant to cover his losses.

4.   As explicitly indicated in the Policy, Plaintiff expected coverage for business income losses arising from interruption of business, including coverage of extra expenses incurred to restore his business and thus minimize his loss of business income. In addition, the Policy provided for business income losses caused by civil authority prohibiting access to his restaurant. Further, the Policy provided for extended business income losses even after operations could resume.

5.   Instead, Defendant swiftly denied Plaintiff's claim. In denying Plaintiff's claim, Defendant wrongfully asserted that Plaintiff's losses were not "direct physical loss of or damage" to his business. Defendant also wrongfully asserted that language in the Policy purporting to exclude claims arising from any "virus, bacterium or other microorganism" was applicable to the global COVID-19 pandemic. In a recent decision, the Pennsylvania Supreme Court reached the opposite conclusion, finding

that the COVID-19 pandemic constituted a natural disaster causing direct property damage to all businesses impacted.

6. On behalf of all other businesses insured by Defendant whose claims Defendant similarly denied, Plaintiff alleges Defendant has breached its contracts with its insureds and has been unjustly enriched.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed Classes have more than 100 members, the Classes contain at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

8. The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this District, is authorized to and conducts substantial business in Pennsylvania and within this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District, in which Defendant's principal offices are located.

## PARTIES

10. Plaintiff Victor Deoleo is a resident of New Jersey and is the owner and operator of Santas Beauty Salon in Hackensack, within Bergen County, New Jersey.

11. Defendant United States Liability Insurance Company is a national property-casualty mutual insurance company with its principal place of business in Wayne, Pennsylvania.

## FACTUAL ALLEGATIONS

12. To protect his salon and the business income generated from its operation, Plaintiff invested in the Policy from Defendant. In exchange for Defendant's coverage, Plaintiff regularly paid monthly premiums to Defendant to maintain the Policy. The Policy was effective on July 9, 2019 and is set to expire on July 9, 2020. Santas Beauty Salon is located in Hackensack, New Jersey, and is the business and property insured under the Policy.

13. The Policy is what is known as an "all-risk" commercial insurance policy, which means that all risks of loss are covered unless specifically excluded in the Policy. In the Policy, Defendant explicitly agreed to pay for all losses caused by "Covered Causes of Loss," which Defendant defines as "Risks of direct physical loss" unless the loss is excluded under the Policy.

14. The Policy provides for loss of business income through what is commonly known as business interruption coverage: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

15. Defendant defines "Business Income" as the net profit the business would have earned if operations were not suspended, plus any continuing normal

operating expenses, including payroll. Defendant defines "Suspension" as, *inter alia*, a slowdown or cessation of the insured's business activities.

16. Defendant defines "Period of restoration" as the period of time that begins 72 hours after the physical loss or damage to the property and ending when the property is repaired or when business resumes at a new location, whichever is earlier.

17. The Policy also provides extra expense coverage: "We will pay necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property . . . caused by or result[ing] from a Covered Cause of Loss."

18. In addition, the Policy provides extended business income coverage, in which Defendant promises to cover business losses up to 30 days after operations would have resumed under certain conditions.

19. Further, the Policy specifically provides "Civil Authority" coverage: "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises."

20. On March 4, 2020, New Jersey's governor, Phil Murphy, announcing the first reported case of COVID-19 in New Jersey, within Bergen County.

21. On March 9, 2020, Governor Murphy declared a state of emergency in New Jersey.

22. On March 10, 2020, state officials announced the first COVID-related death in the state, also within Bergen County.

23. On March 16, 2020, Governor Murphy announced new regulations prohibiting gatherings of 50 or more people, suggesting a statewide curfew of 8 p.m., and closing non-essential businesses indefinitely, effective that same day at 8 p.m.

24. Also on March 16, Governor Murphy announced that all state schools, colleges, and universities would close indefinitely on March 18, 2020.

25. On March 19, 2020, Governor Murphy ordered all personal care businesses—including hair salons, nail salons, spas, barber shops, and tattoo parlors—to close by 8 p.m. that same day, stating, "We've basically shut the state down. Stay home."

26. New Jersey's "stay at home" order will remain in effect until further notice. As of the date of this filing, over 141,000 residents of New Jeresey have been infected with COVID-19 and over 9,700 have died from COVID-19. Bergen County continues to be the worst-affected county in the state, with over 17,000 cases and over 1,400 deaths reported.

27. Due to the statewide restrictions on movement and operation of non-essential business, Plaintiff suffered significant loss of business income, as patrons were initially urged to avoid and, ultimately, prohibited to patronize beauty salons. By the middle of March 2020, Plaintiff was forced to suspend business operations at his

salon. He subsequently made a claim to Defendant for his loss of business income. Defendant denied Plaintiff's claim in a letter dated April 7, 2020.

28.   As a result of the suspension of his business, Plaintiff has sustained significant financial losses and may not be able to ever operate his salon again.

29.   Defendant's denial of Plaintiff's claim heavily relied on language in the Policy which purports to exclude claims arising from, "Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Further, Defendant's denial letter asserts that Plaintiff's loss of business income was not covered because it was "no damage" to his business property.

30.   Contrary to Defendant's assertions, Plaintiff's loss of business profits should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the "virus" exclusion in the Policy, and Plaintiff's loss of business profits constitute actual damage to his business property. The current global catastrophe is much different from, for example, an episode of food poisoning affecting several restaurant patrons. The COVID-19 pandemic is much closer to a natural disaster than a "loss due to virus or bacteria."

31.   Recently, the Pennsylvania Supreme Court agreed, finding that COVID-19 fit the Pennsylvania Emergency Code's definition of a "natural disaster" because, like a hurricane or a flood, it has involved "substantial damage to property, hardship,

suffering or possible loss of life." *See Friends of Danny DeVito, et al. v. Tom Wolf, Governor, et al.*, No. 68 MM 2020, 21 n.11 (Pa. Apr. 13, 2020) (quoting Pa. C.S. § 7102).

32. The Pennsylvania Supreme Court found that any affected business location is within such a "disaster area" and has sustained property damage because COVID-19 is "spread by person-to-person contact, . . . has an incubation period of up to fourteen days, . . . can live on surfaces for up to four days and can remain in the air within confined areas and structures." *Id.* at 29. Thus, the Court rejected an argument that COVID-19 must be detected at a specific location for that location to fall within the scope of the disaster area. *Id.*

33. One of the fundamental bases for Defendant's denial was its assertion that Plaintiff had not suffered "damage to property"; yet, as the Pennsylvania Supreme Court recently held, that is precisely what Plaintiff has suffered as a result of COVID-19 in the form of loss of business income and, in reality, the complete loss of his livelihood as a small business owner.

34. Under the Policy, Defendant promised to cover the type of business losses and expenses Plaintiff has suffered and was obligated to pay for them. But in a breach of its contractual obligations, Defendant denied Plaintiff's claim and has failed to pay for his losses and expenses.

35. Upon information belief, Defendant has failed to pay for similar business losses and expenses suffered by hundreds, if not thousands, of other insureds holding policies that are, in all material respects, identical to the Policy.

## CLASS ACTION ALLEGATIONS

36. Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following class:

> All persons residing in the United States who made insurance claims with Defendant for loss of business income and/or expenses to minimize the suspension of business due to COVID-19 and/or actions of any civil authority in response to COVID-19, which Defendant denied or has otherwise failed to acknowledge, accept as covered losses or expenses, or pay for the covered losses or expenses.

37. Excluded from the Class is Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendant. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after he has had an opportunity to conduct discovery.

38. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many hundreds, if not thousands, of businesses are insured by Defendant with policies substantively identical to Plaintiff's Policy.

39. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting

only individual Class members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant breached its insurance policy agreements with Plaintiff and the Class by denying valid claims for coverage made under the terms of those agreements;

    b.    Whether Defendant breached the implied covenant of good faith and fair dealing implied in its policy agreements;

    c.    Whether Defendant has a uniform policy to interpret its agreements terms and conditions in a way so that Defendant would not have to honor its policy agreements with Plaintiff and the Class;

    d.    Whether Defendant has been unjustly enriched by retaining insurance premiums and failing to honor claims resulting from COVID-19; and

    e.    Whether Plaintiff and the Class are entitled to equitable and declaratory relief.

40.    <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of other Class members. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

41.    <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

42. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Breach of Contract
**(On Behalf of Plaintiff and the Class)**

43. Plaintiff hereby re-alleges every factual allegation contained above.

44. Defendant have entered into contracts with Plaintiff and the Class under which Defendant agreed to provide insurance coverage to Plaintiff and the Class pursuant to the terms of their commercial policy agreements.

45. Plaintiff and the Class performed all their obligations under these contracts.

46. Defendant breached its contracts with Plaintiff and the Class by improperly denying coverage by mischaracterizing the language of its policy agreements to exclude Plaintiff's and the Class's claims.

47. Plaintiff and the Class have sustained damages as a result of Defendant's breaches of contract in an amount to be proven at trial.

## COUNT II
## Breach of the Duty of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

48. Plaintiff hereby re-alleges every factual allegation contained above.

49. Good faith is an element of the contract that Plaintiff and the Class entered into with Defendant in obtaining insurance coverage. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.

50. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

51. Plaintiff and the Class performed all their obligations under their implied contracts with Defendant.

52. Defendant breached the covenant of good faith and fair dealing by purposefully mischaracterizing provisions of its insurance coverage agreements so as to not honor its contractual duties to Plaintiff and the Class under those agreements.

53. Plaintiff and the Class have sustained damages as a result of Defendant's breaches of the covenant of good faith and fair dealing in an amount to be proven at trial.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

54. Plaintiff hereby re-alleges every factual allegation contained above. This claim is plead in the alternative.

55. Plaintiff and the Class conferred a benefit on Defendant by paying Defendant money in exchange for insurance coverage.

56. The circumstances are such that it would be unjust and inequitable for Defendant to retain the benefit that it unjustly received from Plaintiff and the Class now that Defendant has wrongfully denied Plaintiff's and the Class's claims for business losses and expenses due to the COVID-19 pandemic.

57. Plaintiff and the Class are entitled to recover damages from Defendant as a result of Defendant's unjust enrichment in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.  Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.  Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.  Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

E.  Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

F.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Dated: May 14, 2020

*Benjamin F. Johns*
Benjamin F. Johns
*BFJ@chimicles.com*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: 610-642-8500; Fax: 610-649-3633

Tina Wolfson*
*twolfson@ahdootwolfson.com*
Bradley K. King*
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585
(*\*pro hac vice* applications forthcoming)

*Counsel for Plaintiff and the Putative Class*