# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR DEOLEO, individually and on behalf of all others similarly situated, | : | Case No.: 2:20-cv-02301-PD |
| | : | |
| Plaintiff, | : | *Oral Argument Requested* |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation, | : | |
| | : | |
| Defendant. | : | |

---

## UNITED STATES LIABILITY INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING JPML RULING

---

**SAIBER LLC**
1515 Market Street, Suite 1200
Philadelphia, Pennsylvania 19102
Tel. (215) 854-6362
Fax (215) 569-0216

*Attorneys for Defendant, United States Liability Insurance Company*

On the Brief:
    Vincent J. Proto, Esq.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

FACTUAL BACKGROUND ......................................................................5

    A.    THE TRANSFER MOTIONS PENDING BEFORE THE
JPML ...........................................................................................5

    B.    THE USLI POLICY .....................................................................6

    C.    DEOLEO'S CLAIMS AGAINST USLI..........................................6

    D.    USLI'S MOTION TO DISMISS ..................................................8

LEGAL ARGUMENT................................................................................9

    I.    LEGAL STANDARD APPLICABLE TO A MOTION FOR
STAY...........................................................................................9

    II.    A STAY SHOULD BE DENIED WHERE A DISPOSITIVE
MOTION COULD OBVIATE THE NEED FOR TRANSFER
TO AN MDL ...............................................................................11

    III.    DEOLEO FAILS TO SHOW THAT A STAY IS
WARRANTED .............................................................................14

        A.    USLI Will Be Prejudiced if a Stay Is Granted.........................14

            1.    Deoleo's Motion Is Premised on the Flawed
Assumption that a Stay Would Be "Relatively
Short"..............................................................................14

            2.    A Stay of Any Length Will Prejudice USLI's
Right to Prompt Adjudication of this Coverage
Action ..............................................................................16

        B.    Deoleo Has Not Identified Any Hardship or Inequity that
He Will Suffer Absent a Stay.....................................................17

        C.    The Interests of Judicial Economy Weigh Strongly
Against the Issuance of a Stay ...................................................20

i

1.      Deoleo's Speculation Regarding the Success of the
        MDL Transfer Motions Does Not Support a Stay .........20

2.      Deoleo's Argument about the Potential for
        Inconsistent Rulings Is a Red Herring...........................23

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster at Paris*,
  376 F. Supp. 887 (J.P.M.L. 1974) ..................................................................9, 10

*Berkseth-Rojos v. Aspen Am. Ins. Co.*,
  No. 3:20-cv-00948 (N.D. Tex. Apr. 29, 2020) ..................................................22

*Billy Goat Tavern I, Inc. v. Society Ins.*,
  No. 2942 (J.P.M.L. Apr. 21, 2020)....................................................................22

*Billy's Seafood, Inc. v. Transocean Holdings, Inc*.,
  No. 10-cv-215, 2010 U.S. Dist. LEXIS 51852
  (S.D. Ala. May 25, 2010).......................................................................12, 13, 19

*Boudin v. ATM Holdings, Inc.*,
  No. 07-cv-18, 2007 U.S. Dist. LEXIS 47067
  (S.D. Ala. June 27, 2007)...................................................................................18

*Bridal Expressions LLC v. Owens Ins. Co.*,
  No. 2942 (J.P.M.L. Apr. 20, 2020)....................................................................22

*In re Chinese Drywall Litig.*,
  No. 2047 (J.P.M.L. June 15, 2010).....................................................................23

*Clinton v. Jones*,
  520 U.S. 681 (1997)..............................................................................................9

*In re: COVID-19 Business Interruption Insurance Coverage
  Litigation*, No. 2942 (J.P.M.L. May 14, 2020)..................................................21

*In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood
  Claims Litig.*, 325 F. Supp. 3d 1367 (J.P.M.L. 2018) .......................................23

*Gavrilides Mgmt. Co. vs. Michigan Ins. Co.*,
  No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cnty. July 1, 2020).......4, 5, 17, 24

*Grider v. Keystone Health Plan Cent., Inc.*,
No. 01-cv-5641, 2004 U.S. Dist. LEXIS 31990
(E.D. Pa. May 5, 2004) ...................................................................... 16

*In re iPhone Application Litig.*,
No. 10-cv-5878, 2011 U.S. Dist. LEXIS 57970
(N.D. Cal. May 31, 2011) ........................................................ 12, 13, 16, 19

*Jozwiak v. Stryker Corp.*,
No. 6:09-cv-1985, 2010 U.S. Dist. LEXIS 8103
(M.D. Fla. Jan. 11, 2010) .................................................................... 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .................................................................. 9, 10, 17

*Laudenbach Periodontics & Dental Implants, Ltd.*
*v. Liberty Mut. Ins. Grp.*,
No. 2:20-cv-2029 (E.D. Pa. May 26, 2020) ...................................... 13

*In re Multidistrict Patent Litig. Involving Kaehni Patent*,
311 F. Supp. 1342 (J.P.M.L. 1970) .................................................. 11

I*n re Multidistrict Private Civil Treble Damage Litig.*,
298 F. Supp. 484 (J.P.M.L. 1968) .................................................... 12

*In re Res. Expl., Sec. Litig.*,
483 F. Supp. 817 (J.P.M.L. 1980) .................................................... 11

*SA Hospitality Group, LLC v. Hartford Fin. Servs. Grp., Inc.*,
No. 1:20-cv-3258 (S.D.N.Y.) .......................................................... 13

*SA Palm Beach LLC v. Certain Underwriters at Lloyd's London*,
No. 9:20-cv-80677 (S.D. Fla. May 28, 2020) ................................... 13

*Sao Paulo v. Am. Tobacco Co.*,
No. 98-cv-3279, 2000 U.S. Dist. LEXIS 9617
(E.D. La. May 25, 2000) ................................................................... 10

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
No. 20-cv-3311 (S.D.N.Y. May 14, 2020) .............................. 4, 17, 24

*United States v. Breyer*,
41 F.3d 884 (3d Cir. 1994) ............................................................... 9

*In re Volkswagen & Audi Warranty Extension Litig.*,
    692 F.3d 4 (1st Cir. 2012)....................................................................21

**Statutes**

28 U.S.C. § 1407 ..................................................................1, 5, 12, 21

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................*passim*

Fed. R. Civ. P. 15 ...................................................................................1, 9

JMPL Rule 2.1 ........................................................................................10

JMPL Rule 6.1 ........................................................................................15

JMPL Rule 7.1 ...................................................................................14, 15

MANUAL FOR COMPLEX LITIGATION,
    FEDERAL JUDICIAL CENTER (4th ed. 2004) ......................10, 11, 20, 24

## PRELIMINARY STATEMENT

Plaintiff Victor Deoleo, the owner of a beauty salon in Hackensack, New Jersey, filed this action against defendant United States Liability Insurance Company ("USLI") seeking a declaration that USLI is required to provide him insurance coverage for the loss of business income allegedly sustained when his salon closed due to restrictions issued by the State of New Jersey to combat the spread of the coronavirus. As set forth in USLI's June 23, 2020 motion to dismiss, Deoleo's claim for coverage is without merit.

Deoleo is now attempting in two different ways to delay the dismissal of his coverage claims. First, on June 26, 2020, Deoleo moved to stay this case pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML") on two motions seeking coordinated or consolidated pretrial proceedings of actions concerning business interruption insurance coverage pursuant to 28 U.S.C. § 1407. Dkt. 13. Second, on July 6, 2020, Deoleo advised the Court that he will be filing an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). Dkt. 18. Deoleo's stated intention to file an amended complaint is a transparent effort to moot USLI's motion to dismiss in furtherance of his effort to stay this action pending the resolution of the transfer motions before the JPML. USLI intends to promptly renew its motion to dismiss upon the filing of Deoleo's amended complaint. USLI respectfully submits that its renewed motion for dismiss should be adjudicated without delay, consistent

with all of the reasons why Deoleo's stay motion should be summarily denied.

There is no basis on which to stay this action pending a decision by the JPML as to whether it will centralize the handling of hundreds of separate actions involving business interruption coverage disputes relating to the coronavirus. First, Deoleo's stay motion is founded on a misapprehension of the nature of the applications pending before the JPML and fails to account for the motion practice required to address whether this particular case should be transferred to the MDL. Given the significant expense of MDL litigation and the fact that USLI's renewed motion to dismiss will be ripe for adjudication by late August or early September, USLI would oppose such transfer. Under such circumstances, this action would linger for months at great expense to the parties with zero progress on the merits. The interests of the parties and the Court would be far better served by having this Court address USLI's motion to dismiss once renewed.

Second, there is no reason to delay a ruling on USLI's forthcoming motion to dismiss when such a ruling could very well resolve the case and negate any purported need to transfer this action to any MDL. The JPML has shown a strong preference to have dispositive motions resolved *prior to* transfer, going as far as to craft transfer orders that carve out cases in which Rule 12(b) motions are pending or anticipated.

Third, a stay would prejudice USLI's right to prompt adjudication of Deoleo's claims, including his accusation that USLI somehow acted in bad faith. This is the

only coronavirus-related coverage action pending against USLI, and USLI should not be dragged into time consuming and expensive MDL proceedings based on a pleading that fails to state a claim.

Fourth, the denial of a stay would not impose any inequity or undue hardship upon Deoleo, thereby dooming the instant motion. Deoleo chose to file his action while the MDL transfer motions were pending. Deoleo's counsel then waited until USLI filed its motion to dismiss before making an initial filing with the JPML (*hours later*) and notifying USLI of Deoleo's intention to seek a stay (*the very next day*). Having initiated a lawsuit against USLI, forcing USLI to undertake the expense of responding to the Complaint, Deoleo cannot identify any inequity. There is no burden on Deoleo beyond the routine task of defending the adequacy of a Complaint (and an Amended Complaint) that he elected to file in this Court. In this regard, USLI's renewed motion to dismiss will need to be resolved regardless of whether an MDL is ordered.

Last, the fundamental assumption underlying Deoleo's motion -- that a stay is warranted because MDL litigation is likely -- is flawed. A long line of decisions shows that it is very *unlikely* that the JPML will consolidate hundreds of different coverage disputes brought by hundreds of different businesses under hundreds of policies issued by dozens of different insurers that involve varying terms, conditions, and exclusions and that are subject to the differing laws of more than 50 jurisdictions.

Because insurance coverage actions are governed by State law, the JPML has made clear that they are particularly unsuitable for consolidation in an MDL. Thus, contrary to Deoleo's contention, there is no justifiable concern about inconsistent results. Each case will turn on the interpretation of specific policy terms issued to each business under a particular State's law. This Court can also assure decisions are consistent by granting USLI's renewed motion to dismiss in accord with two recent decisions holding that coronavirus-related losses do not trigger the coverage at issue here. *See* Transcript at 15, *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-3311 (S.D.N.Y. May 14, 2020) (Dkt. 12-5); Oral Decision, *Gavrilides Mgmt. Co. vs. Michigan Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cnty. July 1, 2020) (*available at* https://youtu.be/Dsy4pA5NoPw).[1]

Under nearly identical circumstances, courts in at least three other coronavirus-related insurance coverage actions have already refused to grant stays and have directed the parties to proceed with briefing on Federal Rule 12(b) motions. USLI respectfully requests that this Court do the same.

---

[1] USLI retained a certified court reporter to prepare a transcript of the court proceedings in *Gavrilides* based on the livestream video posted on YouTube. *See* Declaration of Wendy L. Walinski, dated July 8, 2020, at ¶¶ 3-5 & Ex. A.

## FACTUAL BACKGROUND

**A.     THE TRANSFER MOTIONS PENDING BEFORE THE JPML**

In the wake of the COVID-19 pandemic, businesses across the country have made claims under their property insurance policies to try to recover lost income. Policyholders have now filed hundreds of actions against dozens of insurers in state and federal courts.

On April 20, 2020, plaintiffs in two matters petitioned the JPML to establish multidistrict litigation ("MDL") under 28 USC § 1407 for federal actions seeking business interruption coverage for coronavirus-related losses. *See* Dkt. 15-1. The plaintiffs requested the transfer of 11 specific actions to the MDL for coordinated pre-trial proceedings. *Id.* at 1 n.2, 12. A second motion, filed on April 21, 2020, sought the transfer of five additional matters to the proposed MDL. *See* Dkt. 15-2.

Briefing regarding the MDL closed on June 16, 2020. As of June 30, 2020, there were 70 submissions in response to the MDL applications, 47 (*i.e.*, 67%) of which opposed the MDL, including submissions in opposition from 12 policyholders and 1 nonprofit entity representing the interests of policyholders as amicus curiae. The JPML is expected to consider the motions at its next bimonthly meeting on July 30, 2020. USLI has not had any involvement with the proceedings before the JPML, and, as of today's date, this action is the only coronavirus-related, insurance coverage action that has been filed against USLI. Dkt. 15-3; Proto Decl., ¶ 3.

**B.     THE USLI POLICY**

Deoleo purchased first-party insurance coverage from USLI for a beauty salon that he owns and operates in Hackensack, New Jersey. Dkt. 1 at ¶¶ 10, 12. Coverage is provided under USLI insurance policy no. BP 1603599, effective July 9, 2019 to July 9, 2020. *See id.* at ¶ 1; Dkt. 12-3 (the "Policy").

The Policy includes extensions of coverage for losses relating to business interruption and acts of civil authority subject to specific requirements. Dkt. 12-3 at 5-7, 27. It also contains two exclusions that plainly and unambiguously exclude coverage for losses arising, directly or indirectly, from "any virus." *Id.* (Coverage Form at 13-16 and Form BP 48 (05-16) at 2).

**C.     DEOLEO'S CLAIMS AGAINST USLI**

Deoleo submitted a claim for coverage under the Policy for an alleged loss of business income sustained when his business was forced to shut down due to executive orders issued by New Jersey Governor Phil Murphy in response to the novel coronavirus. On April 7, 2020, USLI issued a letter denying coverage with a lengthy explanation of the reasons that Deoleo's claim is not covered under the terms of the Policy. Dkt. 12-4. USLI offered Deoleo multiple alternative paths for obtaining further review of the denial of coverage. *Id.* at 4-5. Deoleo did not avail himself of any of these options. *See* Dkt. 1.

On May 14, 2020 -- nearly one month after the motions requesting MDL were

filed -- Deoleo commenced this putative class action alleging that he is owed coverage for loss of business income sustained when his business was forced to shut down due to executive orders issued by New Jersey's governor in response to the coronavirus. Dkt. 1 at ¶¶ 23, 25. Deoleo alleges that the "loss of business profits constitute[s] actual damage to his business property" and calls on the Court to disregard the clear language excluding coverage for losses arising "directly or indirectly" and "in any sequence" from any virus. *Id.* at ¶ 30. The Complaint accuses USLI of acting in bad faith and seeks relief on behalf of Deoleo and members of a proposed nationwide class. *Id.* at ¶¶ 36-42, 48-53.

The Complaint conveys an urgent need to have the Court address this coverage dispute, alleging that Deoleo "suffered extensive loss of business profits and had to close the salon down," "promptly sought relief" from USLI "[a]fter being devastated by the impact of COVID-19 on his business," and "may not be able to ever operate his salon again." Dkt. 1 at ¶¶ 2-3, 28.  Deoleo also alleged that he is facing a "complete loss of livelihood" as a result of COVID-19. *Id.* at ¶ 33.

By Order dated June 10, 2020, the Court established a schedule for this matter that requires the parties to exchange initial discovery requests by July 13, 2020, and provide their responses by July 28, 2020. Dkt. 9. The schedule requires that summary judgment motions be filed by September 11, 2020 and sets a trial date for December 8, 2020. *Id.*

7

**D.     USLI'S MOTION TO DISMISS**

On June 23, 2020, USLI moved to dismiss Deoleo's Complaint in its entirety. Dkt. 12. As detailed in USLI's motion, Deoleo has failed to identify any physical property damage or loss necessary to trigger coverage under the clear terms of the Policy's business interruption provisions and has similarly failed to satisfy several requirements for coverage under its civil authority provision. Dkt. 12-9. Moreover, even if Deoleo could carry his burden to establish coverage under the terms of the Policy, which USLI disputes, two separate exclusions for losses relating directly or indirectly to "any virus" conclusively bar coverage as a matter of law. *Id.*

Just a few hours after USLI had filed its motion to dismiss, Deoleo's counsel advised that they would be filing a Notice of Related Actions with the JPML, identifying this and three other actions in which Ahdoot & Wolfson is also plaintiff's counsel, as being potentially related to the putative MDL. Declaration of Vincent J. Proto, Esq., dated July 9, 2020 ("Proto Decl.") at ¶ 4 & Ex. A. The next day, June 24, 2020 (several months after the MDL motions were filed), Deoleo's counsel contacted USLI's counsel to request that USLI consent to a stay of this action, including Deoleo's time to respond to USLI's motion to dismiss, pending a potential transfer of this case to the proposed MDL. *Id.* at ¶ 5. Deoleo's counsel also requested a minimum two-week extension of time to respond to USLI's motion to dismiss. *Id.* On June 25, 2020, USLI's counsel advised Deoleo's counsel that USLI could not

consent to a stay of this action or an extension of time for Deoleo to respond to USLI's motion to dismiss. *Id.* at ¶ 6.

Rather than file papers in opposition to USLI's motion to dismiss, on July 6, 2020, Deoleo advised the Court that he intends to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) by July 14, 2020. Dkt. 18. USLI intends to renew its motion to dismiss in response to the amended complaint. Under this Court's procedures, briefing on the renewed motion to dismiss should be completed by late August or early September.

## LEGAL ARGUMENT

## I.     LEGAL STANDARD APPLICABLE TO A MOTION FOR STAY

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also In re Air Crash Disaster at Paris*, 376 F. Supp. 887, 888 (J.P.M.L. 1974) (the decision of whether to stay matters pending a ruling by the JPML is "within the sole discretion of the transferor judges").

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. at 708. The proponent "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see also United States v. Breyer*, 41 F.3d 884, 893

(3d Cir. 1994) ("[a] stay is an extraordinary measure" requiring "compelling reasons for its issuance"). Under *Landis*, courts may stay actions pending a ruling by the JPML only upon a finding that three factors favor the issuance of a stay: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985, 2010 U.S. Dist. LEXIS 8103, at *5 (M.D. Fla. Jan. 11, 2010) (denying a stay pending a decision by the JPML).

The pendency of an MDL transfer application does not satisfy this standard. *See In re Air Crash Disaster at Paris*, 376 F. Supp. at 888 ("the mere pendency of a motion before the [JPML] … does not in any way limit the jurisdiction of the transferor court to rule upon matters properly presented to it for decision"); MANUAL FOR COMPLEX LITIGATION, FEDERAL JUDICIAL CENTER, § 20.131 (4th ed. 2004) (pending a JPML ruling on transfer, a court should not "automatically postpone rulings on pending motions, or generally suspend further proceedings").

Contrary to Deoleo's suggestion that stays are favored in these circumstances, the JPML rules state that motions for transfer should not affect ongoing proceedings. JPML Rule 2.1(d) (stating that the pendency of an MDL application "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending"). *See also Sao Paulo v. Am. Tobacco Co.*, No. 98-cv-3279, 2000 U.S. Dist.

LEXIS 9617, at *4-5 (E.D. La. May 25, 2000) (rejecting the proposition that "a stay pending a decision by the MDL Panel is somehow favored," and quoting a JPML Chairman as "lament[ing] the fact that transferor judges often choose not to exercise their continued jurisdiction").

## II.   A STAY SHOULD BE DENIED WHERE A DISPOSITIVE MOTION COULD OBVIATE THE NEED FOR TRANSFER TO AN MDL

As explained in the Manual for Complex Litigation, matters "raising issues unique to the particular case" -- such as a motion testing the adequacy of a complaint -- "may be particularly appropriate for resolution before the [JPML] acts on the motion to transfer." § 20.131. The JPML has demonstrated a preference for having originating courts resolve dispositive motions, adjusting its transfer orders to accommodate decisions on motions that may negate the transfer of particular matters to an MDL. *See, e.g., In re Res. Expl., Sec. Litig.*, 483 F. Supp. 817, 822-823 (J.P.M.L. 1980) (establishing an MDL but postponing the transfer of a particular action in which a motion for summary judgment was pending); *In re Multidistrict Patent Litig. Involving Kaehni Patent*, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970) (deferring transfer of an action in which a motion to dismiss was pending because, "if the motion is granted, there of course will be no transfer"). *See also* MANUAL FOR COMPLEX LITIGATION, § 20.131 (explaining that the JPML "has sometimes delayed ruling on transfer to permit the court in which the case is pending to decide critical, fully briefed and argued motions"). To that end, the JPML has explained:

It is obvious that, under Section 1407, there will be proposals to transfer civil actions in which important pretrial motions are under submission or are reaching the point of submission. These motions include motions for dismissal ….

On principles of comity, where appropriate, the Panel has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts … to reach timely decisions on particular issues without abrupt, disconcerting, untimely or inappropriate orders of transfer by the Panel. This policy of comity has been followed in the past and will be followed in the future by the Panel.

In *re Multidistrict Private Civil Treble Damage Litig.*, 298 F. Supp. 484, 496 (J.P.M.L. 1968).

Applying these principles, courts have recognized that a pending motion for consolidation under 28 U.S.C. § 1407 should not hinder the initial pleading and motion stages of individual cases from moving forward. *See, e.g.*, *In re iPhone Application Litig.*, No. 10-cv-5878, 2011 U.S. Dist. LEXIS 57970, at *9-10 (N.D. Cal. May 31, 2011) (denying plaintiffs' motion to stay where defendant had yet to respond to the complaint); *Billy's Seafood, Inc. v. Transocean Holdings, Inc.*, No. 10-cv-215, 2010 U.S. Dist. LEXIS 51852, at *4-5 (S.D. Ala. May 25, 2010) (explaining that a stay pending an MDL ruling would be "unnecessary," "unwarranted," and "premature" where defendants had yet to file an answer and Rule 12(b) motions had yet to be briefed). For instance, in *In re iPhone Application Litigation,* the court recognized that the issuance of a stay pending a decision on an MDL application would be a disservice to the parties and the court:

12

> Apple essentially contends that no matter the allegations made by
> Plaintiffs, various legal arguments (i.e., no Article III standing / injury)
> will dispose of the Consolidated Complaint as a matter of law in a
> motion to dismiss. If Apple is correct, then judicial economy and
> Plaintiffs' and Defendants' interests in an efficient and timely
> resolution of the claims at issue will be best served by starting the
> motion practice sooner rather than later.

2011 U.S. Dist. LEXIS 57970 at *9-10. *See also Transocean Holdings,* 2010 U.S. Dist. LEXIS 51852 at *5 ("it would benefit both parties and the transferee court to have a clear picture of the issues joined and the defense raised, with briefing of any threshold legal issues already completed, at the time of any [MDL] transfer order").

With respect to the current wave of COVID-19 litigation, several courts already have refused to grant identical stay requests. *See* Order, *Laudenbach Periodontics & Dental Implants, Ltd. v. Liberty Mut. Ins. Grp.*, No. 2:20-cv-2029, ECF No. 12 (E.D. Pa. May 26, 2020) (Savage, J.) (Proto Decl. at Ex. B) (denying a stay pending a ruling by the JPML); Order Denying Motion to Stay, *SA Palm Beach LLC v. Certain Underwriters at Lloyd's London*, No. 9:20-cv-80677, ECF No. 15 (S.D. Fla. May 28, 2020) (Proto Decl. at Ex. C) (denying stay motion as to defendants' deadline to respond to the complaint and briefing on a defendants' promised motion to dismiss); *SA Hospitality Group, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-3258, ECF Nos. 27, 28 (S.D.N.Y.) (Proto Decl. at Exs. D-E) (pre-conference letter requesting stay pending MDL ruling and subsequent conference order setting briefing schedule for Rule 12 motions).

**III.**     **DEOLEO FAILS TO SHOW THAT A STAY IS WARRANTED**

    **A.**     **USLI Will Be Prejudiced if a Stay Is Granted**

        **1.**     **Deoleo's Motion Is Premised on the Flawed Assumption that a Stay Would Be "Relatively Short"**

Deoleo argues that USLI will suffer no prejudice because a stay of this matter would be "relativity short." Moving Br. at 5. He asserts that "the JPML will rule on the pending motions to transfer not long after those motions are heard on July 30, 2020," erroneously concluding "[i]n all likelihood, these proceedings will only be delayed not much more than one month…." *Id.* at 5-6. This represents a fundamental misapprehension of the MDL process and fails to account for the significant delay involved in the transfer of this action to a hypothetical MDL.

The two motions currently pending before the JPML pertain to specific cases that were identified for transfer well before the filing of Deoleo's Complaint. The issue under consideration by the JPML is whether, as a general matter, an MDL should be established. A ruling on that issue will not result in the automatic transfer of this case and would only be the first step in the transfer process. *See* Dkt. 15-4 at 4-5 (JPML hearing order stating that only those actions submitted with the April 2020 transfer motions will be considered for transfer and that "[i]n the event these dockets are centralized, other actions of which the Panel has been informed may be subject to transfer pursuant to Panel Rule 7.1"). If an MDL is established, the process to transfer this action would need to be commenced, at which time USLI would have

the opportunity to specify all of the reasons why a transfer would not be appropriate.

In the unlikely event that an MDL for all business interruption coverage litigation nationwide is ordered, USLI would oppose the transfer of this action -- the only pending action in the country against USLI involving coronavirus-related stay-home orders -- based on the massive expense of MDL litigation and the fact that the key issues in this coverage dispute will be ripe for adjudication by this Court as part of USLI's renewed motion to dismiss. The parties' discrete coverage dispute can and should be resolved on the basis of the terms of the Policy issued to Deoleo without the need for the parties to incur the time and expense inherent in MDL litigation.

Following an order establishing an MDL, the JPML clerk issues a Conditional Transfer Order ("CTO"). JPML Rule 7.1. Assuming this action is included in an initial CTO, the parties would then have 7 days to file a Notice of Opposition and an additional 14 days to move to vacate the CTO. *Id.* There would then be an additional 28-day period for briefing on the motion. JPML Rule 6.1(c)-(d). Finally, the matter would be set for consideration at one of the JPML's bimonthly hearings. JPML Rule 7.1(f). The earliest this would occur is at the December 3, 2020 hearing (just five days before the current December 8, 2020 trial date in this action). In such a case, if Deoleo's stay motion were to be granted, USLI's renewed motion to dismiss would not be addressed until well into 2021, by which time USLI will have incurred significant expense monitoring the MDL and participating in the transfer process.

Deoleo's disregard of the MDL transfer process permeates his brief and forms a false premise on which many of his arguments are based. The proposed stay would be far longer and far more burdensome and costly than Deoleo claims. It is far more reasonable and economical for the parties and the Court to address the adequacy of Deoleo's claims now, rather than in 2021. *See In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 57970 at *9-10 ("judicial economy and [the parties'] interests in an efficient and timely resolution of the claims at issue will be best served by starting the motion practice sooner rather than later").

> ### 2.   A Stay of Any Length Will Prejudice USLI's Right to Prompt Adjudication of this Coverage Action

Deoleo rushed to file this action, through a Complaint that is replete with various inaccurate and sensational allegations, including those accusing USLI of acting in bad faith. USLI should have an opportunity to obtain a prompt determination that it does not owe coverage for Deoleo's claims. As Deoleo's own Complaint recognizes, losses relating to the coronavirus are widespread, and USLI is prejudiced by any delay of its opportunity to rebut Deoleo's assertions that such claims are covered under the terms of its policies. *See Grider v. Keystone Health Plan Cent., Inc.*, No. 01-cv-5641, 2004 U.S. Dist. LEXIS 31990 (E.D. Pa. May 5, 2004) (denying a stay pending an MDL ruling because "delay of these proceedings may prejudice [the non-moving parties'] rights to expeditious adjudication of their claims in the event that the matter is not transferred").

As set forth in USLI's June 23 motion to dismiss, the allegations in Deoleo's Complaint do not trigger coverage under the insuring agreements of the Policy and, even if they did, the Policy's virus exclusions preclude coverage for coronavirus-related claims in full. Deoleo's anticipated amended complaint cannot cure these inherent defects with his coverage claim.

Indeed, to the best of USLI's knowledge, the only two courts to address the issue both held that losses from coronavirus-related stay-home orders do not trigger business interruption or civil authority coverage. *See* Transcript at 15, *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-3311 (S.D.N.Y. May 14, 2020) (Dkt. 12-5) (holding on a request for a preliminary injunction that such losses are "just not what's covered under these insurance policies"); Oral Decision, *Gavrilides Mgmt. Co. vs. Michigan Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham County July 1, 2020) (available at https://youtu.be/Dsy4pA5NoPw) (dismissing a complaint and holding that stay-home orders do not trigger coverage and the virus exclusion also barred coverage). Simply put, a stay would prejudice USLI's effort to obtain a timely resolution of Deoleo's meritless claims.

### B. Deoleo Has Not Identified Any Hardship or Inequity that He Will Suffer Absent a Stay

Deoleo fails to make any credible showing toward "a clear case of hardship or inequity" absent a stay. *Landis*, 299 U.S. at 255. This failure dooms his motion.

The only purported allegation of harm that can be gleaned from the motion

lies in Deoleo's vague assertion that he will incur "unnecessary expenditure of costs and resources" if the stay is denied and the motion to establish an MDL is ultimately granted. Moving Br. at 8. Yet, Deoleo chose to file this action when he did -- more than one month after the filing of the MDL transfer motions. He could have easily waited to file his lawsuit until after the JPML ruled on those transfer motions.

Then, Deoleo's counsel waited until USLI had incurred the expense of preparing and filing a motion to dismiss before filing the Notice of Related Actions with the JPML (just hours after USLI's motion to dismiss was filed) and advising USLI (the very next day) that Deoleo had suddenly decided to seek a stay based on the transfer motions that had been pending for months before the JPML. Deoleo's stratagem of delay is further evidenced by his July 6 pronouncement that he intends to file an amended complaint. Dkt. 18.

Under these circumstances, it is disingenuous for Deoleo to protest that he does not want to expend resources to oppose USLI's motion to dismiss an action that Deoleo himself chose to file in this Court well after the filing of the transfer motions before the JPML. *See Boudin v. ATM Holdings, Inc.*, No. 07-cv-18, 2007 U.S. Dist. LEXIS 47067, at *3-4 (S.D. Ala. June 27, 2007) (denying a stay pending an MDL ruling because "no plaintiff has a right to delay a ruling on a ripe motion to dismiss simply so that the case can be transferred to another forum where he believes he might stand a better chance of defeating the motion").

Deoleo does not face any burden beyond the time and expense of opposing USLI's forthcoming, renewed motion to dismiss -- time and expense that he will incur regardless of the outcome of the transfer motions.  Contrary to Deoleo's vague and unsupported assertions, the parties do not currently face any duplicative or burdensome motion practice or discovery.  *See In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 57970 at \*8 (holding that the mere assertion that a stay was necessary to avoid "duplicative pretrial proceedings and needless expenditure of the Court's resources" was insufficient to support a stay pending an MDL ruling).  The fact that USLI's renewed motion to dismiss will need to be briefed and decided regardless of venue undermines Deoleo's hollow assertion of hardship or inequity. *See Transocean Holdings,* 2010 U.S. Dist. LEXIS 51852 at \*5 (holding that a stay pending a decision by the JPML "would not rescue defendants from material hardship or the risk of inconsistent adjudications" because the parties would need to address threshold legal issues through Rule 12(b) motions regardless of whether the matter was transferred to MDL).

Further, Deoleo's request for a stay is at odds with the Complaint in which he states an urgent need to have this Court address the coverage dispute. Deoleo alleges in the Complaint that he sought coverage "promptly" and is now suffering "devastat[ing]" harm to his livelihood. Dkt. 1 at ¶¶ 2, 3, 28, 33. These allegations belie Deoleo's present assertion that this action must be stayed pending the

19

resolution of the transfer motions before the JPML.

In short, Deoleo has failed to make the clear case of hardship or inequity required for the issuance of a stay.

### C. The Interests of Judicial Economy Weigh Strongly Against the Issuance of a Stay

#### 1. Deoleo's Speculation Regarding the Success of the MDL Transfer Motions Does Not Support a Stay

Deoleo argues that a stay is in the interests of judicial economy by claiming that the JPML will likely order an MDL. Moving Br. at 6-8. This is presumably in recognition of the fact that "[t]he reasons for a stay diminish … if MDL transfer appears unlikely…." MANUAL FOR COMPLEX LITIGATION, § 22.35. The Court should not yield to Deoleo's conspicuous effort to preempt critical examination of this claim. *See* Moving Br. at 8 ("[a]ny attempt by [USLI] to argue that JPML transfer is somehow more unlikely in this instance would be a highly speculative position…").

Deoleo's speculation about the likelihood of an MDL rests on sweeping and unfounded generalizations about the hundreds of individual coverage disputes involving hundreds of different policies that have been filed to date. *See* Moving Br. at 6-8. Deoleo cites no direct support for his gross oversimplification of the dizzying array of disparate legal and factual issues presented by the proposed MDL, including his blanket statement that the underlying cases "present strikingly similar allegations." *Id.* Instead, he relies entirely on self-serving characterizations offered

by the very policyholders seeking the MDL. Critically, however, the differences among the pending coverage cases are so numerous, significant, and unmanageable that many other policyholders actually oppose consolidation. *See, e.g.*, *In re: COVID-19 Business Interruption Insurance Coverage Litigation*, No. 2942, ECF Nos. 19, 198, 399, 417, 427, 431, 443, 444, 456, 470, 473 (J.P.M.L.) (docket entries for policyholder and amicus curiae briefs opposing MDL) (Proto Decl., Ex. F).

Indisputably, discovery and the determination of legal issues in the hundreds of filed cases will need to occur on a state-by-state, party-by-party, and claim-by-claim basis. As one policyholder explained, the transfer motions "improperly seek to consolidate both individual and class action lawsuits filed against *different* insurers, advancing *different* claims, concerning *different* insurance policies, and governed by *different* states' laws -- including different and evolving statewide stay-at-home orders which vary dramatically in scope, duration and implementation…." *In re: COVID-19 Business Interruption Insurance Coverage Litigation*, No. 2942, ECF No. 198 at \*1-2 (J.P.M.L. May 14, 2020) (Proto Decl., Ex. G) (emphasis in original). Further complicating matters, an MDL court would need to grapple with the choice-of-law rules of each of the 50-plus originating jurisdictions. *See In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012) ("Where a suit is consolidated and transferred under § 1407, courts typically apply the choice of law rules of each of the transferor courts").

Deoleo's claim that the insurance policies involve "the same boilerplate policy language" is demonstrably false. Even where two insurance policies contain the same general *type* of coverage, provisions are often worded differently and may be interpreted differently when read in the context of the entire policy. *Compare* Dkt. 12-3 (Coverage Form at 7) *with* Proto Decl., Ex. H (Supp. to Compl., *Berkseth-Rojos v. Aspen Am. Ins. Co.*, No. 3:20-cv-00948, ECF No. 5 at 56 (N.D. Tex. filed Apr. 29, 2020)) (differently worded civil authority coverages). Similarly, exclusions and limitations on coverage differ across policies. *See*, *e.g.*, Dkt. 12-3 (Form BP 48 (05-16) at 2) (USLI Policy excluding coverage for "any virus") *with* Proto Decl., Ex. I (Compl. ¶ 6, *Bridal Expressions LLC v. Owens Ins. Co.*, No. 2942, ECF No. 1-11 (J.P.M.L. filed Apr. 20, 2020) (alleging "communicable diseases" exclusion that does not apply to property policy)) *and* Proto Decl., Ex. J (Compl. ¶ 37, *Billy Goat Tavern I, Inc. v. Society Ins.*, No. 2942, ECF No. 4-10 (J.P.M.L. filed Apr. 21, 2020) (alleging no virus or communicable diseases exclusion)).

Insurance coverage disputes are not tort actions where common legal rulings can apply to many different claims. They are contract cases, with terms that are far from uniform, that are interpreted differently from State to State, and that will be applied to factual scenarios that vary from business to business. For these reasons, the JPML has found that insurance coverage actions are ill-suited for consolidation precisely because the claims are so individualized:

22

> Consistent legal rulings are often a thankful by-product of centralization, but Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues. Each of the insurance coverage questions in these cases is likely to be decided by an application of the complaint to the policy language under the applicable state law…. In these circumstances, the similarity of legal issues alone is not enough to justify transfer ….

Order, *In re Chinese Drywall Litig.*, No. 2047, ECF No. 257 (J.P.M.L. June 15, 2010) (Proto Decl., Ex. K). Just two years ago, the JPML refused to consolidate hurricane-related property insurance claims because each underlying claim, like those here, involved "different property, different insureds, different witnesses, different proofs of loss, and different damages" and, therefore, could not be managed efficiently in an MDL. *In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018).

### 2.   Deoleo's Argument about the Potential for Inconsistent Rulings Is a Red Herring

The fact that each case will turn on the unique facts, policy terms, and State law at issue means that Deoleo's protests about the need to avoid inconsistent rulings are grossly overstated. Given that coverage disputes are resolved based on applicable State law, rulings in cases nationwide always have been and, in this situation, are unlikely to be consistent, even in the context of an MDL. The parties in this and other cases are better served by having their disputes addressed by courts that can focus on the specific State's law at issue.

In any event, a stay here would not advance the goal of avoiding inconsistent

rulings. The sole issue before this Court on USLI's renewed motion to dismiss will be the adequacy of Deoleo's Amended Complaint under the particular State law governing the interpretation of the specific terms of the USLI Policy. A ruling on that issue will be specific to this case and will serve the interests of justice and judicial economy by ensuring that the parties are not thrust into an MDL based on a complaint that cannot pass muster. *See* MANUAL FOR COMPLEX LITIGATION, § 22.35 ("Judicial economy may … be served by resolving specific issues and declining to stay the proceedings").

To the extent that the results in the coronavirus-related insurance coverage disputes should be uniform, this Court can assure such consistency by ruling on USLI's renewed motion to dismiss and following the two recent decisions recognizing that coronavirus-related losses do not trigger business interruption or civil authority insurance coverage. Transcript at 15, *Social Life* (Dkt. 12-5); Oral Decision, *Gavrilides Mgmt.* (available at https://youtu.be/Dsy4pA5NoPw).

## <u>CONCLUSION</u>

For the foregoing reasons, USLI respectfully requests that the Court deny Deoleo's motion to stay these proceedings and grant such other and further relief as the Court deems just and proper.

Dated: July 9, 2020                    Respectfully submitted,

**SAIBER LLC**


By:      *s/ Vincent J. Proto*
         VINCENT J. PROTO, ESQ.
         1515 Market Street, Suite 1200
         Philadelphia, Pennsylvania 19102
         Tel. (215) 854-6362
         Fax (215) 569-0216
         vproto@saiber.com
         *Attorneys for Defendant, United*
         *States Liability Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on July 9, 2020, I caused a true and correct copy of defendant United States Liability Insurance Company's Memorandum of Law in opposition to Plaintiff Victor Deoleo's motion to stay along with the Declaration of Vincent J. Proto, Esq., dated July 9, 2020, and the Declaration of Wendy L. Walinski, dated July 8, 2020, to be served via ECF upon the following:

Bradley K. King, Esq.
Ahdoot & Wolfson, PC
10728 Lindbrook Drive
Los Angeles, California 90024
bking@ahdootwolfson.com
*Attorneys for Plaintiff*
*Victor Deoleo*

Benjamin F. Johns, Esq.
Chimicles Schwartz Kriner & Donaldson-Smith LLP
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
bfj@chimicles.com
*Attorneys for Plaintiff*
*Victor Deoleo*

Dated: July 9, 2020

   *s/ Vincent J. Proto*
Vincent J. Proto, Esq.
Saiber LLC
1515 Market Street, Suite 1200
Philadelphia, Pennsylvania 19102
Tel. (215) 854-6362
Fax (215) 569-0216
vproto@saiber.com
*Attorneys for Defendant, United*
*States Liability Insurance Company*

26